UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 14-10064-CIV-KING/TORRES

AVELINO BARTOLON-PEREZ and all others )
similarly situated under 29 U.S.C. 216(B), )
)
              Plaintiff, )
  vs. )
)
ISLAND GRANITE & STONE, INC. )
JONATHAN BURNS, )
)
             Defendants. )
_____ )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II OF THE AMENDED COMPLAINT [DE65]

COMES NOW the Plaintiff, through undersigned counsel, and Responds to [DE65] as follows:

## INTRODUCTION

1. This matter sounds under the Fair Labor Standards Act ("FLSA") regarding unpaid overtime wages. [DE42]. Plaintiff also seeks damages for retaliatory discharge under 29 U.S. C. 215(a)(3) against Defendants, jointly and severally.

2. Defendants seek partial summary judgment arguing that Plaintiff cannot establish a *prima facie* case with regards to Count II, Retaliation, of the Amended Complaint. Specifically, Defendants' contend Plaintiff refused Defendants' request to complete and return a standard government-mandated employment form and abandoned his job and, as such, when he did not return after several weeks, Defendants' terminated his employment.

3. Plaintiff in turn responds and establishes herein the three-part test of a *prima facie* claim of retaliation as articulated by the Eleventh Circuit in *Wolf v. Coca-Cola Co.,* 200 F.3d 1337 (11th Cir. 2000).

1

4. The first prong is satisfied as Plaintiff engaged in protected activity by filing the subject lawsuit.

5. The second prong is satisfied as Plaintiff suffered an adverse action by his employer, Defendants, and precipitating emotional distress, namely Defendants attempt to persuade Plaintiff to accept a settlement, which included a one-way ticket to return to his country of origin, forcing him to work away from all the other employees under the hot sun, significantly reducing his hours, and ultimately terminating him for not signing a document relevant to Plaintiff's immigration status despite the fact that Defendants were well aware of Plaintiff's immigration status prior to hiring him to work and only made an issue of it soon after the overtime lawsuit was served on Defendants. Undoubtedly, the terrorem effect caused by Defendants' adverse action would deter any current employee from asserting his/her mandated rights for fear of reprisal or even deportation.

6. The third prong is satisfied as there is clearly a causal connection between Plaintiff's activity, the filing of the subject lawsuit, and the adverse actions, those facts set forth in the Amended Complaint and *supra.* Defendants' knew full well of Plaintiff's legal status and only made an issue of it soon after his overtime claim was filed and there is no other explanation or cause as to why Defendants treated Plaintiff as such. Moreover, Defendants' retaliated against Plaintiff as set forth in Par. 5 above.

7. Therefore, this Court should deny Defendants' Motion [DE65]. Alternatively, at a minimum, the Court should find that there is a genuine issue of material fact and Plaintiff's retaliation claim should be submitted to the Jury.

## MEMORANDUM OF LAW AND ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

### B. PLAINTIFF'S RETALIATION CLAIM NEEDS TO BE SUBMITTED TO THE JURY.

29 U.S.C. 215(a)(3) states that it is illegal to:

> "it shall be unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq., generally; for full classification, consult USCS Tables volumes], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

In the Eleventh Circuit, retaliation claims under the FLSA are analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act. *See e.g., Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir.2000). The Plaintiff, to prevail, only needs to demonstrate a genuine issue of material fact regarding three elements for

3

retaliation pursuant to 29 U.S.C. 215(a)(3) and *Wolf v. Coca-Cola Co.,* 200 F.3d 1337 (11th Cir. 2000): (1) that he engaged in activity protected under the Act; (2) that he subsequently suffered adverse action by the employer; (3) the presence of causal connection between the Plaintiff's activity and the adverse action. *See also* Reich v. Davis, 50 F.3d 962 (11th Cir. 1995) (the leading 11th Circuit case which discusses the standards for retaliation pursuant to 29 U.S.C. 215 (A)(3)).

As to the first prong, it is clear that the first factor of the *prima facie* case, under *Wolf,* has been met. Plaintiff engaged in activity protected under the Act as, on or about March 18, 2014, Plaintiff filed the subject lawsuit asserting his mandated rights for overtime under the FLSA.

The Eleventh Circuit has stated, "an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire, or constructive discharge in order to qualify as an adverse employment action." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1118 (11th Cir.2001) (citation omitted) (internal quotation marks omitted); *Shannon v. Bellsouth Telecommunications, Inc.,* 292 F.3d 712, 716 (11th Cir. 2002); *See also Gupta v. Florida Bd. Of Regents,* 212 F.3d 571 (11th Cir. 2000). Instead, an employer's actions constitute adverse employment action if they reach "some threshold level of substantiality." *Johnson v. Advertiser Co.,* 778 F. Supp. 2d 1270, 1278-79 (M.D. Ala. 2011). The relevant inquiry is whether an employer's actions likely would have "dissuaded a reasonable worker from making or supporting a charge" against the employer. *Id. See also Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006),

4

*Vandesande v. Miami-Dade Cnty.,* 431 F. Supp. 2d 1245, 1253 (S.D. Fla. 2006). *Suchite v. Kleppin,* states:

> For an action of an employer to be considered adverse and retaliatory, the employee must prove that the action would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (decided in the Title VII context). **Requesting in open court that a judge refer a plaintiff for criminal investigation and possible prosecution or deportation would dissuade a reasonable worker from making or supporting a charge of discrimination. A reasonable worker would believe that the request could result in him being referred to law enforcement.[1]**

*Suchite v. Kleppin*, 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011) reconsideration denied, 10-21166-CIV, 2012 WL 1933344 (S.D. Fla. Mar. 23, 2012). "[T]he reporting of any violation of the criminal laws is conduct which ordinarily should be encouraged, not penalized." *Sure-Tan, I.c, v. NLRB*, 467 U.S. 883, 895, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). Nevertheless, doing so out of retaliatory animus may be unlawful. *Id. See also Suchite v. Kleppin*, 819 F. Supp. 2d 1284 (S.D. Fla. 2011).

*Boyd,* citing to *Wu,* states:

> Moreover, while the Eleventh Circuit has not interpreted the statutory language to mean that an employer cannot retaliate against an employee by making an "adverse employment decision," it has not defined what constitutes such action. Cases addressing the retaliation provision of Title VII have found that

---

[1] The Court made this finding, however, *Kleppin* prevailed because Plaintiff did not present any evidence that Defendants' desire to inform the Court regarding Plaintiffs' status in the interests of courthouse safety was a pretext and did not address this argument in any meaningful way. *Suchite v. Kleppin,* 819 F. Supp. 2d 1284, 1296-97 (S.D. Fla. 2011); *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). Therefore, the Court held that Plaintiff's failure to produce evidence that Defendant's safety concerns were a pretext mandates granting summary judgment. *Id.* In the case at bar, Plaintiff herein presents evidence that the real motivation for Defendants' actions (i.e. persuading Plaintiff to accept a one-way ticket to return to his country of origin, calling Plaintiff the "illegal," teasing Plaintiff because of his immigration status, forcing Plaintiff to work in the hot sun, significantly reducing Plaintiff's hours, etc.) were retaliatory in nature and were pretextual.

5

>adverse employment decisions include failure to rehire, failure to promote, termination, differential compensation, or some other action which tangibly injures an employee who pursued a Title VII action."

*Id. See also Wu v. Thomas,* 996 F.2d 271, 273 (11th Cir. 1993); *Whatley v. Metropolitan Atlanta Rapid Transit Auth.*, 632 F.2d 1325 (5th Cir.1980) (retaliatory discharge); *Bickel v. Burkhart*, 632 F.2d 1251 (5th Cir.1980) (retaliatory refusal to promote); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982) (retaliatory refusal to rehire). *Boyd* articulates holdings where other courts have addressed the issue of retaliation and have identified a broader range of acts as adverse, based on the scope of their consequences, surmising that these cases reasoning is to effect the Title's purpose "…which is to furnish a remedy against an employer's use of discrimination in connection with a prospective, present or past employment relationship to cause harm to another." *Id. See also Pantchenko v. C. B. Dolge Co., Inc.,* 581 F.2d 1052, 1055 (2d Cir. 1978); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

The anti-retaliation provision of the FLSA was designed in part to prevent fear of economic retaliation by an employer against an employee. *EEOC v. White and Son Enterprise*, 881 F.2d 1006 (11th Cir. 1989). Even discriminatory conduct less drastic than firing is sufficient to trigger a retaliation action. For example, reduction in wages as well as job transfers have been found to violate the 215(A)(3) protections. *See York v. City of Wichita Falls, Texas*, 944 F.2d 236 (5th Cir. 1991) and *Knickerbocker v. City of Stockton*, 81 F.3d 907 (9th Cir. 1996). In *White and Sons supra*, the Eleventh Circuit concluded "that the unofficial complaints expressed" to the defendant was a sufficient assertion of rights, and the conduct of the employer that caused an inference that complaints would not be tolerated (even though the word "fired" was not used) was sufficient to maintain a retaliation action. The Eleventh Circuit thus affirmed the district

court that defendants were liable for retaliatory discharge. *Id*. at 1011-1012. Thus, even a verbal request for FLSA wages is sufficient action by a plaintiff regarding protected activity.

Under *Wolf supra,* Plaintiff was engaged in activity protected under the Act, thus satisfying the first prong. Also, with respect to the following alleged facts, there is at least a genuine issue of material fact as to whether Plaintiff subsequently suffered adverse action by the employer as to prong (2), that exhibited a casual connection under prong (3).

Plaintiff states in his Affidavit that "On (3/18/14), the Initial Complaint in this matter was served on Defendants. [DE1]. After my overtime claim lawsuit was served on Defendants, approximately in April 2014, within approximately (20) days of when Defendants were served with my overtime complaint, I was approached by Tony Beccari, an agent of Defendants, knowing that I was represented by counsel. Beccari told me that Defendant Burns and Edward Gregor has discussed the matter and that Tony Beccari was acting as per instructions received by Defendants. Tony Becarri, as instructed by Defendants, attempted to persuade me to accept a settlement of my overtime case by Defendants, including paying me for a one-way ticket to return to my country of origin, Mexico. I declined to accept same. Specifically, Tony Becarri informed me that the payroll company had found out about the overtime wage lawsuit filed against Defendants that had been served on Defendants. Tony Becarri informed me that the payroll company had been told that the social security number I was using was fake and as a result I would be fired in order to intimidate and pressure me into dropping my overtime wage lawsuit against Defendants. Defendants knew of my immigration status prior to hiring me to work for them and only made an issue of it soon after the overtime lawsuit was served on Defendants. I recall that I started working for Defendants on or about a Tuesday and that week on or about Thursday, Defendant Burns handed me a job application and several forms for me to

fill out. Eduardo was in charge of the particular workshop I was working at and I told Eduardo that I have no legal documents to work in the United States and that I have been using a fake social security for my prior employments. Eduardo informed me that he would talk about the matter with Defendant Burns and informed me that he is sure that Defendant Burns would not have any problem with this. Defendant Burns told me, and Eduardo translated for me into Spanish, in front of my co-workers, David, Jesus, Eduardo, and the secretary at the time, that David should help me fill out the application and that the fact that I did not possess any legal documents to allow me to work in the United States and that I was using a fake social security was not a problem. However, Defendant Burns told me he needed to pay me by check so that I claim taxes and the best way to do that is by check. Tony Becarri took me for lunch and questioned me regarding how much Defendants approximately owed me for the work I had done for which I had not been paid overtime wages for. Tony Becarri told me I should accept monies and a one-way flight home and then to leave the country and go back to Mexico. The following day, Tony Becarri again approached me and pressured and intimidated me in an approximately (2) hour conversation telling me that I should be afraid because Edward Greger (one of the owners) had the ability to call immigration on me and have me deported. I replied to Tony that I would speak to my lawyer and see what he had to say. The next day, Tony again called me and told me that my attorney should talk to Defendants' attorney to close my overtime wage lawsuit and resolve the matter. Approximately an hour later, Tony called me again and told me it would be for the best of the whole company if I settled my overtime wage lawsuit and went back to Mexico and I told Tony he can call Defendant Burns or immigration but I was not going to be intimidated and pressured into settling my overtime wage lawsuit and that I had a lawyer representing me. Said behavior, hostility, and threats against me were because I had filed an

overtime wage lawsuit for my legally mandated overtime wages and said lawsuit was the motivating factor for the treatment and threats. Defendants never treated me like this before I filed my overtime lawsuit against them. Defendants knew of my immigration status prior to hiring me to work for them and only made an issue of it soon after the overtime lawsuit was served on Defendants. Soon after Defendants received my overtime lawsuit, I experienced a hostile work environment and was the only employee who was tasked to work away from all the other employees under the hot sun. At no time was I ever instructed by Defendants or its agents that I was required to work outside for my health and safety. Also, soon after Defendants received the overtime wage lawsuit I experienced a hostile work environment which I never experienced before the overtime lawsuit. Defendant Burns and the other employees stopped talking to me, would only talk to each other, and the employees would look at me and then laugh. I did not understand what the employees were saying and felt extremely uncomfortable and distressed working in such a hostile environment soon after Defendants received the overtime wage lawsuit and which I had not experienced prior. After Defendants received the overtime wage lawsuit, I overheard a conversation that Defendant Burns had with his nephew and Defendant Burns was calling me "the illegal." Defendants knew of my immigration status prior to hiring me to work for them and only made an issue of it soon after the overtime lawsuit was served on Defendants. As a result, some of the other employees (i.e. Timothy S. Dimaio and Jesse E. Staten) started teasing me and making fun of me and the fact that I was not legal. I was extremely distressed, upset, and afraid. All the employees stopped talking to me, except for Tony Beccari, who would only give me instructions and was never as friendly as he was prior to the filing of my overtime wage lawsuit. Tony Beccari told me that Defendant Burns was so angry with me for filing my overtime wage lawsuit and that he said I was so ungrateful and was going

9

to call immigration on me to have me deported. I specifically recall, from on or about May 15, 2014 through on or about May 23, 2014, my hours were significantly reduced to approximately 18-25 hours. I was not paid for said week and as such I do not possess documents that reflect the reduction in my hours. Defendants decreased my hours of work significantly and I was unable to pay my bills as I was economically dependent on Defendants. On or about (5/21/14), I was approached by Defendant Burns and was told to fill out an (8) page document. I do not know if said documents were handed out to any other employees and I do not know whether any of the other employees were required to fill these documents out. The document was in English and I did not understand same. I was provided with a copy of the document translated in Spanish after I requested same. Said documents were relevant to my immigration status and were for the purpose to intimidate and scare me because of the overtime lawsuit pending. I was given approximately (2) days to complete filling out the documents and return them to Defendants. On or about (5/23/14), I met with Defendant Burns and I informed him that I did not intend to fill out the documents as Defendants knew about my immigration status prior to hiring me to work for them and were only making an issue of it as a result of my filing the overtime lawsuit against Defendants. Defendant Burns called his wife and she translated for Defendant Burns who said I must sign the documents provided to me by Defendants. I again responded that I understand that Defendants are making an issue out of these documents and that the only reason I was suddenly required to sign same was because of my overtime wage lawsuit. Defendant Burns told me, through his wife translating, if you are not willing to sign the documents then Defendants do not need me to work for them any longer. Defendants Burns, through his wife translating, told me he did not want to see me anymore and I was terminated as a result of me refusing to fill out and sign documents which Defendants only made an issue of after I filed my overtime wage lawsuit.

I reminded Defendants that I was still owed money for the hours I had worked for (16) hours total that I had worked for Defendants. I did not return to work for Defendants thereafter as my employment was terminated." *See also* Burns Deposition Transcript, P.15, L.9-10 (Defendant states at his deposition "I told him he was welcome to come back to work when [the documents] was completed.).

The issue is not solely governed by whether Claimants actually alleged "adverse employment actions," but also it must be determined whether the conduct alleged in the Complaint might have dissuaded a reasonable worker from making or supporting a charge of discrimination. A reasonable worker would be dissuaded from making or supporting a charge of overtime because such a request could raise legitimate anxiety about deportation and is an adverse action, for example, persuading Plaintiff to accept a one-way ticket to return to his country of origin, calling Plaintiff "the illegal," teasing Plaintiff because of his immigration status, etc. *See also Suchite v. Kleppin*, 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011) reconsideration denied, 10-21166-CIV, 2012 WL 1933344 (S.D. Fla. Mar. 23, 2012). Such discriminatory conduct including the above-mentioned (i.e. persuading Plaintiff to accept a one-way ticket to return to his country of origin, calling Plaintiff the "illegal," etc.) is sufficient to trigger a retaliation action.

Plaintiff states in his Affidavit that "The motivating factor for Defendants' threats and hostility towards me was due to me filing a claim for overtime wages. I have lost sleep and suffer from insomnia as a result of the hostile treatment by Defendants after they received my overtime wage lawsuit and the threats of deportation made by Defendants as a result of my demand for my overtime wages. I also feel extremely depressed and this affects my sleep schedule. I am in a constant state of anxiety and I am afraid of going outside as a result. I did not have this anxiety

11

or fear prior to filing my overtime wage lawsuit. I am continuously afraid that Defendants will have me deported as a result of me filing my lawsuit demanding my overtime wages." Defendants actions constitute adverse employment action that reaches the threshold level of substantiality. Alternatively, a Jury should make a determination at trial of Defendants' motivations for his adverse conduct.

[The] causal link between the protected activity and the adverse action may be suggested by the fact that the alleged retaliation **closely follows the protected activity**. *Strickland v. MICA Info. Sys*, 800 F. Supp. 1320 (M.D.N.C. 1992); *Larsen v. Club Corp. of America, Inc*., 855 F. Supp. 247 (N.D. Ill. 1994). "By giving a broad construction to the anti-retaliation provision ... its purpose will be further promoted." *EEOC v. White & Son Enterprises,* 881 F.2d 1006, 1011 (11th Cir.1989)". The causal connection between the Plaintiff's activity (the filing of the initial lawsuit) and the adverse action (verbal and physical abuse, etc.) is obvious. *See also Embry v. Callahan Eye Found. Hosp.,* 147 Fed. Appx. 819, 830-31 (11th Cir. 2005) (concluding that two month and three day period was sufficient to show **causation** for purposes of *prima facie* case).

In *Reich v. Davis*, 50 F.3d 962 (11th Cir. 1995) the 11th Circuit discussed the standards for retaliation pursuant to 29 U.S.C. 215 (A)(3). Under the *Reich* scheme, the Plaintiff must show that the protected activity was the "but for" or "motivating cause" for the adverse employment action. Other than direct evidence, the Plaintiff may utilize circumstantial evidence to meet her burden. "A Plaintiff may rely on the same evidence both to establish her prima facie case and to cast doubt on the Defendant's nondiscriminatory explanations." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635 (11th Cir. 1998).

In the instant case, there is clear direct and circumstantial evidence alleged (see Plaintiff's Affidavit) showing Plaintiff the causal link between the protected activity and the adverse action

12

which closely follows the protected activity. Plaintiff states in his Affidavit that "On (3/18/14), the Initial Complaint in this matter was served on Defendants. [DE1]. After my overtime claim lawsuit was served on Defendants, approximately in April 2014, within approximately (20) days of when Defendants were served with my overtime complaint, I was approached by Tony Beccari, an agent of Defendants, knowing that I was represented by counsel. Beccari told me that Defendant Burns and Edward Gregor has discussed the matter and that Tony Beccari was acting as per instructions received by Defendants. Tony Becarri, as instructed by Defendants, attempted to persuade me to accept a settlement of my overtime case by Defendants, including paying me for a one-way ticket to return to my country of origin, Mexico. I declined to accept same. Specifically, Tony Becarri informed me that the payroll company had found out about the overtime wage lawsuit filed against Defendants that had been served on Defendants. Tony Becarri informed me that the payroll company had been told that the social security number I was using was fake and as a result I would be fired in order to intimidate and pressure me into dropping my overtime wage lawsuit against Defendants." Defendants, by and through its agents, continued to harass Plaintiff about returning to his country of origin and dropping the pending lawsuit. Plaintiff states in his Affidavit that "Soon after Defendants received my overtime lawsuit, I experienced a hostile work environment and was the only employee who was tasked to work away from all the other employees under the hot sun. At no time was I ever instructed by Defendants or its agents that I was required to work outside for my health and safety. Also, soon after Defendants received the overtime wage lawsuit I experienced a hostile work environment which I never experienced before the overtime lawsuit. Defendant Burns and the other employees stopped talking to me, would only talk to each other, and the employees would look at me and then laugh. I did not understand what the employees were saying and felt extremely

13

uncomfortable and distressed working in such a hostile environment soon after Defendants received the overtime wage lawsuit and which I had not experienced prior. After Defendants received the overtime wage lawsuit, I overheard a conversation that Defendant Burns had with his nephew and Defendant Burns was calling me "the illegal." Defendants knew of my immigration status prior to hiring me to work for them and only made an issue of it soon after the overtime lawsuit was served on Defendants. As a result, some of the other employees (i.e. Timothy S. Dimaio and Jesse E. Staten) started teasing me and making fun of me and the fact that I was not legal. I was extremely distressed, upset, and afraid. All the employees stopped talking to me, except for Tony Beccari, who would only give me instructions and was never as friendly as he was prior to the filing of my overtime wage lawsuit. Tony Beccari told me that Defendant Burns was so angry with me for filing my overtime wage lawsuit and that he said I was so ungrateful and was going to call immigration on me to have me deported." The lawsuit is clearly the cause for Defendants' adverse actions and there is no other reason other than discrimination towards Plaintiff for seeking his mandated wages.

   To the extent that these reasons are subjective, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. Al Transport,* 229 F.3d 1012, 1034 (11th Cit. 2000). "The plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). A reason is not a pretext for discrimination unless it is shown both that the reason was false, and that retaliation was the real

reason. *Brooks v. County Com'n of Jefferson County, Ala.,* 446 F.3d 1160, 1163 (11th Cir.2006) (discrimination case). "If an employer articulates multiple legitimate reasons for the adverse action, the plaintiff must present sufficient evidence that all of those reason are pretextual." *Phillips v. Aaron Rents, Inc.,* 262 Fed.Appx. 202, 208 (11th Cir. 2008) (citing *Chapman v. Al Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)); accord *Ash v. Tyson Foods, Inc.,* 392 Fed.Appx. 817, 825 (11th Cir. 2010) ("The law of this circuit is that a plaintiff must make an evidentiary showing creating a genuine issue of fact as to pretext for each of the defendant's proffered reasons, not merely for some or most of them.").

Defendants contend that they did not have retaliatory motives and that they had legitimate non-retaliatory reasons for requesting Plaintiff to "complete and return a standard government-mandated employment form" as advised by Defendants' payroll company to be kept on file for each employee. *See also* Burns' Affidavit [DE65-3, Par.18]). However, Defendants have failed to show that its articulated reason was not a pretext. Further, in this case, Defendants' articulated reasons are sufficiently specific to permit Plaintiff an opportunity to show they were not pretextual. Plaintiff provides sufficient disputed evidence to counter any of Defendants' alleged non-pretextual reasons of a termination for payroll company procedure. Alternatively, genuine issues exist and Defendants have not shown that Plaintiff's retaliation claims should be disposed of as a matter of law.

Plaintiff states in his Affidavit that "Defendants knew of my immigration status prior to hiring me to work for them and only made an issue of it soon after the overtime lawsuit was served on Defendants. I recall that I started working for Defendants on or about a Tuesday and that week on or about Thursday, Defendant Burns handed me a job application and several forms for me to fill out. Eduardo was in charge of the particular workshop I was working at and I told

Eduardo that I have no legal documents to work in the United States and that I have been using a fake social security for my prior employments. Eduardo informed me that he would talk about the matter with Defendant Burns and informed me that he is sure that Defendant Burns would not have any problem with this. Defendant Burns told me, and Eduardo translated for me into Spanish, in front of my co-workers, David, Jesus, Eduardo, and the secretary at the time, that David should help me fill out the application and that the fact that I did not possess any legal documents to allow me to work in the United States and that I was using a fake social security was not a problem. However, Defendant Burns told me he needed to pay me by check so that I claim taxes and the best way to do that is by check." Plaintiff was working for Defendants in excess of two years without filling out the Employment Eligibility Verification USCIS Form I-9. Plaintiff claimed his mandated rights and a mere two months after Defendants started making an issue of his legal status.

      Plaintiff states in his Affidavit that "On or about (5/23/14), I met with Defendant Burns and I informed him that I did not intend to fill out the documents as Defendants knew about my immigration status prior to hiring me to work for them and were only making an issue of it as a result of my filing the overtime lawsuit against Defendants. Defendant Burns called his wife and she translated for Defendant Burns who said I must sign the documents provided to me by Defendants. I again responded that I understand that Defendants are making an issue out of these documents and that the only reason I was suddenly required to sign same was because of my overtime wage lawsuit." Undoubtedly, the subject lawsuit was the reason for Defendants' adverse actions and said documents relevant to Plaintiff's immigration status, provided to Plaintiff in English (only at his behest was a Spanish translation of same provided to him), were given to Plaintiff solely for the purpose to intimidate and scare Plaintiff because of his pending

overtime lawsuit. Defendants terminated Plaintiff's employment as a result of Plaintiff refusing to fill out and sign said documents and he in no way abandoned his job. Plaintiff states in his Affidavit that "Defendant Burns told me, through his wife translating, if you are not willing to sign the documents then Defendants do not need me to work for them any longer. Defendants Burns, through his wife translating, told me he did not want to see me anymore and I was terminated as a result of me refusing to fill out and sign documents which Defendants only made an issue of after I filed my overtime wage lawsuit. I reminded Defendants that I was still owed money for the hours I had worked for (16) hours total that I had worked for Defendants. I did not return to work for Defendants thereafter as my employment was terminated. The motivating factor for Defendants' threats and hostility towards me was due to me filing a claim for overtime wages." Considering the motive and basis in fact or law in analyzing pretext it is clear Defendants' non-retaliatory reasons fail. Alternatively, the matter should be submitted to the Jury to decide at trial Defendants' motivations for his conduct.

     Finally, the adverse action by the employer, Defendants, was not limited to the filling out of the forms. Plaintiff states in his Affidavit that "Tony Becarri told me I should accept monies and a one-way flight home and then to leave the country and go back to Mexico. The following day, Tony Becarri again approached me and pressured and intimidated me in an approximately (2) hour conversation telling me that I should be afraid because Edward Greger (one of the owners) had the ability to call immigration on me and have me deported. I replied to Tony that I would speak to my lawyer and see what he had to say. The next day, Tony again called me and told me that my attorney should talk to Defendants' attorney to close my overtime wage lawsuit and resolve the matter…Soon after Defendants received my overtime lawsuit, I experienced a hostile work environment and was the only employee who was tasked to work away from all the

17

other employees under the hot sun. At no time was I ever instructed by Defendants or its agents that I was required to work outside for my health and safety…Defendant Burns and the other employees stopped talking to me, would only talk to each other, and the employees would look at me and then laugh. I did not understand what the employees were saying and felt extremely uncomfortable and distressed working in such a hostile environment soon after Defendants received the overtime wage lawsuit and which I had not experienced prior. After Defendants received the overtime wage lawsuit, I overheard a conversation that Defendant Burns had with his nephew and Defendant Burns was calling me "the illegal." Defendants knew of my immigration status prior to hiring me to work for them and only made an issue of it soon after the overtime lawsuit was served on Defendants. As a result, some of the other employees (i.e. Timothy S. Dimaio and Jesse E. Staten) started teasing me and making fun of me and the fact that I was not legal. I was extremely distressed, upset, and afraid. All the employees stopped talking to me, except for Tony Beccari, who would only give me instructions and was never as friendly as he was prior to the filing of my overtime wage lawsuit… Defendants decreased my hours of work significantly and I was unable to pay my bills as I was economically dependent on Defendants."

As set forth herein, Plaintiff can successfully establish a *prima facie* FLSA violation and, thus, is entitled to compensatory relief under the statute as a remedy for Defendants violation of the anti-retaliation provisions of the FLSA.

WHEREFORE, THE PLAINTIFF REQUESTS THAT THE COURT DENY DEFENDANTS' MOTION IN ITS ENTIRETY.

Respectfully submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF
300-71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
305-865-6766
305-865-7167

By:_s/ Rivkah Jaff ___
   Rivkah Jaff, Esquire
   Florida Bar No.: 107511

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED VIA CM/ECF ON 2/17/15 TO:**

**JOSE F. TORRES, ESQ.**
**LAW OFFICE OF CAMPBELL & MALAFY**
**10887 OVERSEAS HIGHWAY, SUITE 201**
**MARATHON, FL 33050**
**PHONE: (305) 743-2492**
**FAX: 786-472-5789**
**EMAIL: CAMPBELLLAW@MAC.COM**

**BY:__/s/____Rivkah Jaff _____**
**RIVKAH JAFF, ESQ.**