**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 14-10064-Civ-KING/TORRES

AVELINO BARTOLON-PEREZ
and all others similarly situated,

Plaintiff,

vs.

ISLAND GRANITE & STONE, INC.
and JONATHAN BURNS,

Defendants.
_________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II OF PLAINTIFF'S AMENDED COMPLAINT**

This matter is before the Court upon Defendants' Motion for Partial Summary Judgment on Count II of the Amended Complaint ("Motion for Partial Summary Judgment"). [D.E. 65].[1] Plaintiff then filed its Response in Opposition to Defendants' Motion for Partial Summary Judgment on Count II of the Amended Complaint ("Response") [D.E. 83], to which Defendant filed its Reply to Plaintiff's Response in Opposition to Defendants' Motion of Summary Judgement on Count II of the Amended Complaint ("Reply"). [D.E. 86]. Defendant's Motion for Partial Summary Judgment has therefore been fully briefed and is ripe for adjudication.

---

[1] The Honorable James Lawrence King referred the motion for our Report and Recommendation. [D.E. 78].

## *I. PROCEDURAL HISTORY*

On March 18, 2014, Plaintiff Avelino Bartolon-Perez ("Plaintiff") filed a one-count Complaint against Island Granite & Stone, Inc. ("Island Granite") and its president, Jonathan Burns ("Burns"), alleging that Defendants owed Plaintiff for undercompensated overtime labor pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. [D.E. 1]. Eight months later, on November 21, 2014, Plaintiff amended his complaint to add a second count alleging retaliation under 29 U.S.C. § 215(a)(3). [D.E. 42]. Defendants later moved for summary judgment as to Count I of Plaintiff's Complaint, [D.E. 53], which was granted on April 2, 2015 [D.E. 93], and Count II [D.E. 66], which remains before the Court at present.

Plaintiff's remaining claims under Count II allege that Plaintiff experienced the following acts of retaliation after he filed his initial Complaint against Defendants: (1) Reduction in work hours; (2) a hostile work environment; (3) being "tasked to work away from all the other employees under the hot sun;" and (4) termination of his employment after refusing to fill out documents allegedly related to his immigration status. [D.E. 42 ¶¶ 16 - 21]. Defendants moved for summary judgment as to Count II on January 30, 2015. [D.E. 65]. Plaintiff filed his response on February 17, 2015. [D.E. 82]. Defendants filed their reply on February 26, 2015. [D.E. 86].

## *II. FACTUAL BACKGROUND*

Defendant Island Granite is a business in Marathon, Florida, specializing in the manufacture and installation of marble and granite countertops. Defendant Burns is its President. [D.E. 65-5 ¶ 3]. Plaintiff worked as a fabricator for Island Granite from

April 2012 through May 2014. [D.E. 83-2 ¶ 2]. Plaintiff's job as a fabricator was to cut, shape, and polish marble. [D.E. 83-1 at 15:15-18]. At Island Granite, the employees responsible for dry-cutting and polishing marble worked outside. [D.E. 65-5 ¶ 7]. Physically, only about half of the workspace in Island Granite's workshop is covered by a roof [D.E. 65-5 ¶ 7], with most of the roofed portion being used to house the company's TECO bridge saw, a "large machine . . . bolted to the floor of the shop." [D.E. 65-5 ¶ 7]. Generally, the Island Granite employee working the TECO bridge saw conducts their work alone under the roofed portion, whereas the fabricators work outdoors for space and health-related reasons. [*See* D.E. 65-5 ¶¶ 7, 9]. Defendants maintained time records for Plaintiff throughout the duration of his employment [D.E. 83-1 at 16:18-21], which were filled out by Plaintiff himself. [D.E. 83-1 at 17:9-13].

On or about May 9, 2014, Plaintiff reported chest pain on the job at Island Granite and was taken to the hospital. [D.E. 65-5 ¶ 16]. Afterwards, Burns reported Plaintiff's injury as a workers' compensation incident. [D.E. 65-5 ¶ 17]. While processing the claim, Defendants' payroll company discovered an issue with the social security number on Plaintiff's employment documents. [D.E. 65-5 ¶ 18; *see also* D.E. 83-2 ¶ 6]. Defendants' payroll company alerted Burns to this discrepancy and contemporaneously advised him that new USCIS I-9 forms would be required of each of his employees. [D.E. 65-5 ¶ 18]. Burns therefor made it a requirement that all Island Granite employees fill out additional Employment Eligibility Verification USCIS Form I-9 paperwork. [D.E. 65-5 ¶ 20; *see also* D.E. 65-2 ¶ 1]. Plaintiff was provided with said documents in English and his native Spanish [*See* D.E. 83-2 ¶ 12;

D.E. 65-5 ¶ 22], and was asked to promptly complete and return the paperwork to Defendants. [*See* D.E. 65-5 ¶ 20]. All of Defendants' employees, with the exception of Plaintiff, filled out and returned said documents shortly after they were received. [D.E. 65-5 ¶ 21]. However, on or about May 23, 2014, Plaintiff personally informed Burns of his intention not to fill out the new paperwork. [D.E. 83-2 ¶ 12; *see also* D.E. 65-2 ¶ 9]. Plaintiff refused to sign said documents [D.E. 65-2 ¶ 5], and his employment was subsequently terminated. [*See* D.E. 65-5 ¶ 24; D.E. 83-2 ¶ 12].

## *III. ANALYSIS*

### *A. Applicable Legal Principles*

The Court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Summary judgment is appropriate if this is shown by the pleadings, depositions, interrogatory answers, admissions, and affidavits. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(c) also requires summary judgment against a party who fails to make a sufficient showing, after adequate discovery, to establish the existence of an essential element to its case and on which the party will bear the burden of proof at trial. *Id.* Therefore, to survive a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under the Fair Labor Standards Act, an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). This protects employees against retaliation for asserting their rights under the statute. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000).

Where a plaintiff does not present any direct evidence of retaliation, circumstantial evidence may be evaluated under the burden-shifting framework applicable to claims brought under Title VII of the Civil Rights Act. *Raspanti v. Four Amigos Travel, Inc.,* 266 Fed. App'x 820, 822 (11th Cir. 2008). Under this framework, a plaintiff must first establish a *prima facie* case under the Fair Labor Standards Act. *Id.* This requires a plaintiff to make a showing that (1) plaintiff engaged in activity protected under the Fair Labor Standards Act, (2) plaintiff subsequently suffered adverse action by his employers, and (3) there exists a causal connection between plaintiff's protected activity and plaintiff's employers' adverse actions. *Wolf,* 200 F.3d at 1342-43 (citing another case). To establish the adverse-action element in this context, a plaintiff must prove that their employer's alleged actions would dissuade a reasonable worker from making or supporting an FLSA claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (analyzing this element in the context of a Title VII claim). To establish the causation element in this context, a plaintiff

must prove that the adverse action would not have been taken but for the plaintiff's assertion of their protected rights. *Id.* at 1343.

Once a plaintiff establishes a *prima facie* case of FLSA retaliation, the burden shifts to the defendant, who must articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Raspanti*, 266 F. App'x at 822 (citing *Wolf*, 200 F.3d at 1342-43). However, the defendant's burden of rebuttal is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (analyzing this element in the context of a Title VII claim). Then, if the employer meets its burden of production, the plaintiff must establish that the proffered reason is pretextual to prevail. *Raspanti*, 266 F. App'x at 822 (citing *Wolf*, 200 F.3d at 1342-43). To prevail on pretext, the plaintiff must demonstrate not only that the employer's proffered reason is false, but also that retaliation was the real reason for the adverse action. *See Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (analyzing the pretext requirement in the context of a Title VII claim).

### *B. Plaintiff's Retaliation Claim Fails Because Plaintiff Does Not Meet His Burden of Establishing a* **Prima Facie** *Case of Retaliation under the FLSA.*

A *prima facie* case of retaliation under the FLSA requires that Plaintiff make a significant showing to establish the following three elements: (1) He engaged in activity protected under the Fair Labor Standards Act, (2) he subsequently suffered adverse action at the hands of Defendants, and (3) there exists a causal connection between Plaintiff's lawsuit for overtime wages and Defendants' alleged adverse actions.

*See Wolf,* 200 F.3d at 1342-43. To establish the adverse-action element in this context, Plaintiff must prove that Defendants' alleged actions would have dissuaded a reasonable worker from making or supporting an FLSA claim for overtime wages. *See Burlington Northern*, 548 U.S. at 53. To establish the causation element in this context, Plaintiff must prove that the adverse actions would not have been taken but for the fact that he filed suit against the Defendants. *See Wolf*, 200 F.3d at 1343.

The fact that Plaintiff was engaged in activity protected under the Act is not in dispute in this case. However, Plaintiff has not demonstrated that he suffered subsequent adverse action at the hand of his employers because he engaged in such protected activity. Each of Plaintiff's allegations—that Defendants reduced his hours, subjected him to work in a hostile environment out in the sun, and terminated his employment at Island Granite because he filed suit against his employers—will be addressed in turn.

*1. Plaintiff fails to establish that his hours were reduced because he filed suit against Defendants.*

First, Plaintiff claims that his hours were reduced as a result of the fact that he filed suit against Defendants. He states: "I specifically recall, from on or about May 15, 2014 through on or about May 23, 2014, my hours were significantly reduced to approximately 18-25 hours." [D.E. 83-2 ¶ 11]. Plaintiff's estimation is supported by the record. [*See* D.E. 65-6 at 2]. However, an analysis of all of Plaintiff's hours during the course of the months leading up to and following his lawsuit cut against Plaintiff's theory. Defendants received their summonses on March 28, 2014 [D.E. 6], and

Plaintiff continued to work for them, full time, for a month and a half afterwards. According to his time sheets, Plaintiff's hours after Defendants' received service are as follows: March 27 - April 2, 2014, 42 hours; April 3 - 8, 2014, 42 hours; April 10 - 14, 2014, 41 hours; April 19 - 23, 2014, 45 hours; April 24 - 30, 2014, 44 hours; May 1 - 7, 2014, 38 hours; May 8 - 14, 2014, 32.7 hours; May 15 - 21, 2014, 24 hours. [D.E. 65-6 at 1 - 2]. These figures parallel the hours Plaintiff worked prior to filing suit: February 6 - 12, 2014, 50.5 hours; February 13 - 19, 2014, 40 hours; February 20 - 26, 2014, 32 hours;[2] February 27 - March 5, 2014, 32.7 hours; March 6, - 12, 2014, 36 hours; March 13 - 19, 2014, 32.5 hours; March 20 - 26, 2014, 40 hours. [D.E. 65-6 at 1].

The record shows that Plaintiff's hours tended to vary by the week, and further reveals that some of Plaintiff's longest workweeks took place after Defendants were served with this lawsuit. It does not follow that Plaintiff's hours were altogether reduced after he filed suit, which leaves Plaintiff unable to establish any adverse-action in this regard.

Even in the limited context of the twenty-four hour week Plaintiff logged from March 15 - 21, 2014, Plaintiff still fails to demonstrate a causal connection. Plaintiff provides no evidence suggesting that this one-week reduction is in any way connected to Plaintiff filing suit in March. In the interim, the record details that Plaintiff was sent to the hospital after experiencing an on-the-job medical issue on May 9, 2014. It

---

[2] There appears to be typographical error in the dates provided from January 30 through February 26, 2014 in the referenced exhibit. Based on context, the Court believes it is evident that February 6 through 19 reflect dates worked in 2014 rather than the listed year, 2024.

also details Plaintiff's non-compliance with Defendants' instructions to fill out mandatory employment documents, especially after Defendants' payroll company had picked up on the fact that Plaintiff filed his initial documents under an incorrect social security number.

Plaintiff fails to provide any evidence that would support a finding that a reasonable employee would have found one week's worth of a lightened work schedule—over a month after his employers were issued service and one week after being sent to the hospital while on-the-job, especially following a month and a half of standard hours following the date of filing—to be materially adverse to their employment. Furthermore, the additional fact, that Plaintiff had not complied with his employer's instruction to fill out necessary official paperwork in the interim, cuts further against Plaintiff's contentions. Therefore, Plaintiff has not made a sufficient showing of the second and third essential elements of a FLSA retaliation case with respect to his allegations concerning reduced hours.

2. *Plaintiff fails to establish that he experienced a hostile work environment because he filed suit against Defendants.*

Next, Plaintiff claims that he experienced a hostile work environment after he filed suit. Plaintiff states that co-worker Jesse E. Staten was rude to him during the limited conversations the two had with one another after Plaintiff filed suit. [D.E. 83-2 ¶ 4]. Plaintiff admits, however, that he and Mr. Staten only conversed on occasion prior to his lawsuit, and did so only "in broken English and Spanish." [D.E. 83-2 ¶ 4]. Plaintiff states that he overheard a conversation between Burns and an employee

referring to Plaintiff as "the illegal" and that other employees teased him about his immigration status. [D.E. 83-2 ¶ 10]. Plaintiff also contends that his relationship with Tony Beccari, another employee, soured as a result of his overtime lawsuit. [*See* D.E. 83-2 ¶¶ 6, 8, 10, discussed in further detail below.]. On numerous occasions however, Plaintiff states that Defendants and Defendants' employees had known of Plaintiff's immigration status prior to this lawsuit [*See, e.g.*, D.E. 83-2 ¶¶ 7, 8, 10, 12], which works directly against Plaintiff's contention that any such behavior was the result of Plaintiff's lawsuit against Defendants. Furthermore, the record reflects not only that Defendants did not condone the employees' alleged behavior, but that Defendants were unaware of it. [*See* D.E. 65-5 ¶ 11].

Plaintiff does not provide evidence to support his contention that a reasonable employee would have found Mr. Staten's perceived rudeness to be materially adverse to his employment, particularly when Plaintiff admits that the two were not close and were not able to communicate extensively beforehand due to a language barrier. Plaintiff does not provide evidence to support his allegations concerning Mr. Beccari's behavior, particularly because Mr. Beccari's statements focus specifically on the fact that Defendants' payroll company had discovered Plaintiff's use of an incorrect social security number. In Plaintiff's own words: Becarri "informed me that the payroll company had been told that the social security number I was using was fake and as a result I would be fired." [D.E. 83-2 ¶ 6]. With respect to Plaintiff's allegations concerning comments other employees made about his immigration status, Plaintiff

does not provide evidence to attribute this behavior to Defendants themselves, and does not provide evidence to connect this behavior to Plaintiff filing a lawsuit for overtime pay. Therefore, Plaintiff fails to make a significant showing as to the second and third elements of his claims concerning any alleged hostile or unwelcoming behavior.

*3. Plaintiff fails to establish that he was tasked to work outside in the sun because he filed suit against the Defendants.*

Next, Plaintiff claims that he "was the only employee . . . tasked to work away from all the other employees under the hot sun." [D.E. 42 ¶ 18]. However, Plaintiff provides no evidence to demonstrate that his work conditions changed after he filed suit. On the contrary, the record indicates that it was Island Granite's policy for only those employees charged with use of the TECO bridge saw to work inside. Furthermore, the record indicates that all fabricators and all employees working on dry cutting and polishing conducted their work outside for safety and health-related reasons. Therefore, the record fails to establish that Plaintiff's work area or physical working conditions changed following the date Plaintiff's lawsuit was filed, or even that Plaintiff received disparate treatment in comparison to the other fabricators, granite-cutters, or granite-polishers at any time in this respect. In short, Plaintiff does not provide factual support to connect his initial lawsuit to his claim concerning outdoor work at Island Granite.

4. *Plaintiff fails to establish that his employment was terminated because he filed suit against the Defendants.*

Finally, Plaintiff claims that his employment was terminated as a result of the fact that he filed suit against his employers for overtime pay. He states: "After my overtime claim lawsuit was served on Defendants . . . within approximately (20) days of when Defendants were served with my overtime complaint, I was approached by Tony Beccari" who "attempted to persuade me to accept a settlement of my overtime case by Defendants, including paying me for a one-way ticket to return to my country of origin, Mexico." [D.E. 83-2 ¶ 6]. Plaintiff continues:

> Becarri informed me that the payroll company had found out about the overtime wage lawsuit against Defendants that had been served on Defendants [and] informed me that the payroll company had been told that the social security number I was using was fake and as a result I would be fired.

[D.E. 83-2 ¶ 6]. Plaintiff also states: "Becarri again approached me and pressured and intimidated me in an approximately (2) hour conversation telling me that I should be afraid because Edward Greger (one of the owners) had the ability to call immigration on me and have me deported," [D.E. 83-2 ¶ 8], and " told me that Defendant Burns was so angry with me for filing my overtime wage lawsuit and that he said I was so ungrateful and was going to call immigration on me to have me deported." [D.E. 83-2 ¶ 10]. However, the record indicates that Mr. Becarri did not have authority to hire or fire Plaintiff, nor did he have authority to make or accept an offer of settlement with respect to Plaintiff. [D.E. 65-5 ¶¶ 13-15].

In May 2014, Defendants' payroll company discovered that the information Plaintiff provided them was incorrect with respect to the social security number he listed on his employment documents. [D.E. 65-5 ¶ 18]. The record reflects that written notice concerning Plaintiff's employment files had been sent to Plaintiff directly from the payroll company prior to the date on which Plaintiff first filed suit. [*See* D.E. 65-5 ¶ 18].

In May 2014, Defendants' payroll company advised Burns that a new Employment Eligibility Verification Form—a USCIS I-9—needed to be signed by each of Defendants' employees, as they were missing from the files. [D.E. 65-5 ¶ 18]. Burns provided each employee with a copy of the same shortly after receiving the documents from his payroll company. [*See* 65-5 ¶ 20]. Plaintiff states:

> On or about (5/21/14), I was approached by Defendant Burns and was told to fill out an (8) page document. I do not know if said documents were handed out to any other employees and I do not know whether any of the other employees were required to fill these documents out. The document was in English and I did not understand same. I was provided with a copy of the document translated in Spanish after I requested same. Said documents were relevant to my immigration status . . . .

[D.E. 83-2 ¶ 12]. Plaintiff requested, and was granted, additional time to fill out his form. [D.E. 65-5 ¶ 22]. All employees other than Plaintiff returned the completed forms shortly thereafter. [D.E. 65-5 ¶ 21]. Plaintiff states: "On or about (5/23/14), I met with Defendant Burns and I informed him that I did not intend to fill out the documents . . . . Defendant Burns . . . said I must sign the documents provided to me by Defendants. . . . I did not return to work for Defendants thereafter." [D.E. 83-2 ¶

12; *see also* D.E. 65-5 ¶ 23, 24].

Plaintiff fails to make a showing that Defendants' discharged him from employment as a result of the lawsuit he filed against them for overtime wages. As Plaintiff himself concedes, he was instructed by Defendants to fill out official documentation relevant to his immigration status, and Plaintiff refused to do so. As Plaintiff also states, he did not return to work for Defendants after he refused to fill out the required forms. The record indicates that Defendants' payroll company alerted Defendants to the fact that all of Defendants' employees—not just the Plaintiff—needed to turn in the required documentation. The record also indicates that Defendants informed Plaintiff that he must sign said documents.

The Court likewise does not find that Plaintiff's allegations concerning threats about deportation support a finding that Plaintiff was terminated due to this lawsuit; there is no evidence in the record that Plaintiff has been deported to his country of origin, and there is no evidence in the record that Defendants or any of their employees had the ability to effectuate Plaintiff's deportation.

In order to establish the causation element in a retaliation claim, Plaintiff was required to show that he would not have been subject to adverse action—in this case, losing his job with the Defendants—*but for* the fact that he filed the instant lawsuit. Due to the intervening events established by the record, Plaintiff has been unable to do so. Therefore, he has not made a significant showing with respect to the third element of his retaliation claim based on termination of his employment with Island

Granite and has not met his initial burden concerning the same.

### C. ***Even if Plaintiff Could Establish a Causal Connection Between Plaintiff's Lawsuit and Subsequent Termination, Defendants' have Articulated a Legitimate Nonretaliatory Reason for Terminating Plaintiff's Employment.***

Were Plaintiff to establish his *prima facie* case of FLSA retaliation, the burden would shift to Defendants. To meet this burden, Defendants must then articulate a legitimate, non-retaliatory reason for their adverse actions towards Plaintiff. *See Raspanti*, 266 F. App'x at 822. Notably, Defendants' burden in this respect is "exceedingly light." *See Perryman*, 698 F.2d at 1138.

Defendants are able to meet this burden. It is undisputed that Plaintiff was required to fill out an I-9 form in May 2014 as a condition of continued employment. Defendants have provided evidence that all of their employees were required to fill out and return the very same paperwork. The record reflects that while all of Defendants' other employees did so, Plaintiff refused to fill out, sign, and return the completed form as instructed. Defendants have provided evidence that Plaintiff was injured on the job in the beginning of May 2014, over a month after Defendants received copies of the instant lawsuit for overtime wages. Defendants have also provided evidence that while bringing Plaintiff's medical issues to payroll's attention, Defendants' payroll company indicated that Plaintiff's social security number was incorrect. Payroll thereafter notified Defendants that their employees needed to fill out a new round of I-9 forms. It as only after Plaintiff directly informed Defendants that he would not be filing out his I-9 forms that Defendants decided to let him go. Therefore the Court finds that

even if Plaintiff were able to prove his *prima facie* case, Defendant has met its burden to provide a legitimate, non-retaliatory reason for their actions.

***D. Finally, Plaintiff has not Established that Defendants' Proffered Reasons for Plaintiff's Termination are Pretextual.***

Were Plaintiff to establish his *prima facie* burden, Plaintiff would also have to establish that Defendants' above-proffered reason is pretextual in order to prevail. To prevail on pretext, Plaintiff must prove not only that Defendants' proffered reasons are false, but also that retaliation was the real reason Plaintiff no longer has a job with Defendants. *See Brooks*, 446 F.3d at 1163.

Plaintiff has not provided evidence that would support a finding that Defendants' proffered reason is false. Plaintiff concedes:

> On or about (5/21/14), I was approached by Defendant Burns and was told to fill out an (8) page document. . . . I was provided with a copy of the document translated in Spanish after I requested same. Said documents were relevant to my immigration status. . . . I was given approximately (2) days to complete filling out the documents and return them to Defendants. On or about (5/23/14), I met with Defendant Burns and I informed him that I did not intend to fill out the documents . . . . Defendant Burns . . . said I must sign the documents provided to me by Defendants. . . . Defendant Burns . . . told me . . . I was terminated as a result of me refusing to fill out and sign documents . . . . I did not return to work thereafter as my employment was terminated.

[D.E. 83-2 ¶¶ 12 - 12 (sic)]. As both parties agree on this, the record does not support an argument as to the falsity of Defendants' proffered reason that Plaintiff no longer works for the company. Furthermore, as both parties concede that Plaintiff's employment was terminated due to his refusal to sign and return an I-9 form, Plaintiff is likewise unable to establish that retaliation for his law suit is the real reason for his

termination.

For the reasons discussed above, and particularly because of the intervening events including Plaintiff's admitted refusal to sign and return employment documents as was required of all Island Granite employees, the Court does not find that Plaintiff is able to establish pretext in this record. Plaintiff has not provided the Court with any facts or evidence that would establish that Defendants' proffered reason is false, especially since Plaintiff willingly admits that he refused to sign the documents. Plaintiff has not provided the Court with any evidence establishing that Defendants' real reason for ending Plaintiff's employment was retaliation for Plaintiff's decision to file suit back in March, particularly in light of the intervening events noted in the record.

A reason cannot be a "pretext for discrimination [or retaliation] unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *Brooks,* 446 F.3d at 1163. Plaintiff must therefore point to specific, concrete facts which support his assertion that any reason for Defendant's legitimate, non-retaliatory actions were pretextual. *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence."); *see also Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990) ("To survive summary judgment, the plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory

allegations and assertions will not suffice.”).

Given this standard, Plaintiff cannot meet his burden of producing probative evidence of pretext on her remaining retaliation claims. Therefore, where Defendants have provided a legitimate, nonretaliatory reason for Plaintiff's termination, but Plaintiff has failed to show that Defendants' reason is pretextual, Defendants are entitled to summary judgment as to Count II of Plaintiff's Amended Complaint as a matter of law.

## *IV. CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment as to Count II of Plaintiff's Amended Complaint [D.E. 65] be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties may file written objections with the Honorable James Lawrence King, United States District Judge, **no later than April 24, 2015**. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of April 2015.

EDWIN G. TORRES
United States Magistrate Judge