UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 4:14-10064-CIV-KING

AVELINO BARTOLON-PEREZ
and all others similarly situated,

    Plaintiff,

vs.

ISLAND GRANITE & STONE, INC.
and JONATHAN BURNS,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR RECONSIDERATION, GRANTING SUMMARY JUDGMENT IN PART, AND RESERVING RULING IN PART

THIS CAUSE comes before the Court upon Defendants' Amended Motion for Reconsideration (DE 104). The Court previously entered an Order Granting Summary Judgment in Part (DE 101). Upon reconsideration, the Court hereby vacates its previous Order Granting Summary Judgment in Part (DE 101), and substitutes this Order in its stead.

Presently under consideration is Defendant's Motion for Partial Summary Judgment on Count II of the Amended Complaint (Retaliation) (DE 65). The facts of this case are more fully set forth in Magistrate Judge Edwin G. Torres's Report and Recommendation ("R&R") (DE 95) and in this Court's Order Granting Defendants' Motion for Summary Judgment on Count I (DE 93). What remains to be determined is whether Plaintiff has shown enough facts which, if credited by the factfinder, are sufficient to sustain his claim for unlawful retaliation.

The Court concludes that, even after full consideration of Defendant's Motion for Summary Judgment, a substantial issue remains. That is the issue of Plaintiff's damages—

which damages he has shown, which damages he may recover under the Fair Labor Standards Act, and the effect of these determinations on the viability of his cause of action. Accordingly, this Order concludes by granting in part, and reserving ruling in part, on Defendant's Motion for Summary Judgment. For the issues on which the Court reserves ruling, the Court will enter a separate Order directing the parties to brief the issues that pertain to Plaintiff's damages.

### I.     Plaintiff's Retaliation Claim[1]

Plaintiff's claim for retaliation is brought under the Fair Labor Standards Act, under which employers may not "discharge **or in any other manner discriminate** against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3) (emphasis added). "When, as here, a plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 [(1973)]. Under that framework, the plaintiff must first establish a prima facie case of retaliation." *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 822 (11th Cir. 2008).

### A. Reduction in Work Hours, Hostile Work Environment, and Being Tasked to Work in the Hot Sun

First, Defendants move for summary judgment on Plaintiff's retaliation claim insofar as it seeks recovery based on the following alleged acts: (1) Plaintiff's hours were reduced;

---

[1] Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." In their Motion for Partial Summary Judgment on Count II of the Amended Complaint (DE 65), Defendants identify several "parts" of Plaintiff's Count II on which they move for summary judgment. The Court will address each in turn.

2

(2) Plaintiff experienced a hostile work environment; and (3) Plaintiff was tasked to work in the hot sun.

Plaintiff's objections (DE 96) to the R&R, as they relate to these three issues, consist of re-argument, and do not demonstrate any infirmities in Judge Torres's reasoning or his findings. Nevertheless, the Court has reviewed the parties' briefs and the R&R de novo. The Court concludes that the R&R contains well-reasoned recommendations for granting Plaintiff's motion for summary judgment as to these three issues, in that Plaintiff has failed to show enough evidence sufficient to sustain a prima facie case for retaliation. The Court will affirm and adopt the R&R, as an Order of this Court, with respect to these three issues.

## B. Tony Beccari's Alleged Threats

### 1. Plaintiff Establishes a Prima Facie Case

In 2006, the United States Supreme Court concluded that the similar anti-retaliation provision of Title VII "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

> [T]he provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

*Id.* In this case, Plaintiff relies almost exclusively on his affidavit to defend against summary judgment. He swears to the following:

> within approximately twenty (20) days of when Defendants were served with my overtime complaint, I was approached by Tony Beccari .... Beccari told me that Defendant Burns and Edward Gregor had discussed the matter and that Tony Beccari was acting as per instructions received by Defendants. Tony

3

> Beccari, as instructed by Defendants, attempted to persuade me to accept a settlement of my overtime case by Defendants, including paying me for a one-way ticket to return to my country of origin, Mexico. . . . Tony Becarri informed me that the payroll company had found out about the overtime wage lawsuit filed against Defendants that had been served on Defendants. Tony Becarri informed me that the payroll company had been told that the social security number I was using was fake and as a result I would be fired . . . .
> . . . .
> Tony Becarri again approached me . . . telling me that I should be afraid because Edward Greger [sic] (one of the owners) had the ability to call immigration on me and have me deported.

DE 83-2, at 2–3. Thereafter, on May 15, 2015, Defendant Burns asked Plaintiff (and all other employees) to fill out an Employment Eligibility Verification USCIS Form I-9 (DE 65-1, at 2 ¶ 3), which form would have implicated Plaintiff's immigration status. Plaintiff swears that he told Defendants of his immigration status before Defendants hired him. DE 83-2, at 2–3.

It is undisputed that Plaintiff walked off the job, never to return, after Defendants demanded that he fill out the I-9 form. It is undisputed that Defendants waited several weeks before officially terminating Plaintiff.

On summary judgment, the Court may not undertake the jury's function of weighing the evidence or undertaking credibility determinations. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). If credited by the factfinder, Plaintiff's affidavit shows (1) that Defendants knew of Plaintiff's immigration status before he filed this FLSA action; (2) that approximately one month after service, Plaintiff's supervisor, at the instruction of Defendants, encouraged Plaintiff to settle the FLSA suit, which proposed settlement would include "a one-way ticket" to Mexico; (3) that thereafter Plaintiff's supervisor warned Plaintiff of Gregor's ability to have Plaintiff deported; and (4) that thereafter Defendants demanded Plaintiff fill out an I-9 form, which form would have implicated Plaintiff's

4

immigration status. If credited by the factfinder, the above disputed facts are sufficient to sustain a finding that Defendants' actions "could well dissuade a reasonable worker" in Plaintiff's circumstances from "making or supporting" a FLSA action, *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57.

Defendants protest that there is no evidence in the record that Plaintiff's supervisor had authority to settle on behalf of the Defendants, or that Defendants had the "authority to deport Plaintiff." But the Court is unable to discern the legal relevance of these propositions, and Defendants cite no legal authority in connection therewith. First, it cannot be denied that Defendants had the ability to *report* Plaintiff to immigration authorities. That was the content of the alleged threat. Second, Beccari's alleged lack of authority to settle on behalf of Defendants has no legal relevance to the retaliation question where he, in the light most favorable to Plaintiff, acted as Defendant's agent in a direct attempt to "dissuade" Plaintiff from pursuing his FLSA action. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57. Under these circumstances, Plaintiff's evidence can sustain a prima facie case of retaliation.

### 2. Defendants' Proffered Legitimate, Non-Discriminatory Business Reasons

The next step in the inquiry is for Defendants to proffer legitimate, non-discriminatory business reasons for their actions. First, Defendants proffer no legitimate, non-discriminatory business reasons for the alleged acts of Plaintiff's supervisor—which, when viewed in the light most favorable to Plaintiff, were no less than threats to get Plaintiff in trouble with immigration authorities if he did not settle his FLSA case. As to these alleged actions, Defendants have failed in their burden of production.

Defendants have, however, proffered a legitimate, non-discriminatory business reason for demanding that Plaintiff fill out an I-9 form—namely, that requiring employees to fill out

an I-9 form is a perfectly legitimate legal requirement. Defendants have also proffered a legitimate, non-discriminatory business reason for terminating Plaintiff—namely, that Plaintiff abandoned his job.

It seems that Defendants would have the inquiry end here, judging from their ardent protestations as to the legitimate character of their actions. "It is important to bear in mind, however, that the defendant's burden of rebuttal is exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'" *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (employing the *McDonnell Douglas* framework in a Title VII case) (quotation omitted).

### 3. Plaintiff Shows Pretext

After Defendants meet their exceedingly light burden of production, Plaintiff must, to create a triable issue as to Defendants' retaliatory intent, establish pretext. "To establish pretext," Plaintiff must "prove that 'the proffered reason was not the true reason for the employment decision ... either ... by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation [was] unworthy of credence.'" *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823-24 (11th Cir. 2008) (quoting *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir.2005)). "'Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it.'" *Id.* (quoting *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir.2000) (en banc)).

### i. The Alleged Threats and Demand to Fill Out the I-9 Form

Plaintiff rebuts Defendants' proffered reason for requiring Plaintiff to fill out an I-9 form by pointing to the behavior of his supervisor, and to the fact that Defendants knew of Plaintiff's immigration status even before hiring him. Taken in the light most favorable to Plaintiff, Defendants waited until shortly after Plaintiff pursued his FLSA action to hold Plaintiff's immigration status over his head—by threatening him directly at first, and then indirectly through demanding he fill out the I-9 a form.

Of course, "the 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925, n.3 (11th Cir. 2000)). Whether Defendants knew of Plaintiff's immigration status before hiring him, whether or how Tony Beccari threatened Plaintiff, and the circumstances surrounding Defendants' demand that Plaintiff fill out the I-9 form, are genuinely disputed. At this stage, Plaintiff has shown enough evidence, if credited, to sustain a finding of pretext.

### ii. Plaintiff's Termination

This Court cannot underestimate the fear and intimidation that a person who is in this country illegally may experience at the prospect of being punished for his presence by lawful authorities. Neither can this Court underestimate the willingness of others to exploit these fears to their own advantage. It is upon reconsideration of these realities, and of the supported, conflicting evidence shown by both sides at this summary judgment stage, that the Court concludes Plaintiff has shown enough evidence to sustain a finding of pretext as to his termination.

Courts within the Eleventh Circuit have either assumed or decided that a constructive discharge may constitute an adverse employment action for purposes of showing retaliation—under the anti-retaliation provisions of the FLSA and other statutes. *See, e.g., Marshall v. Suicide Prevention of Florida*, No. WPB-76-8339-CIV-CF, 1977 WL 1766, at *8 (S.D. Fla. Aug. 1, 1977) (concluding that "defendants . . . violated the Fair Labor Standards Act by constructively discharging Helen Uribe."); *Barrera v. Valero Doral Inc.*, No. 10-cv-22982 (S.D. Fla. Jan. 11, 2012) (granting default judgment on Plaintiff's claims, which included a claim for retaliatory constructive discharge); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1138 (N.D. Ga. 2004) ("Assuming an adverse employment action can be based on a theory of constructive discharge" in a FLSA case); *Nero v. Hosp. Auth. of Wilkes Cnty.*, 86 F. Supp. 2d 1214, 1228 (S.D. Ga. 1998) (in a § 1983 action for First-Amendment-based retaliation, stating that "[a]n adverse employment action can also take the form of a constructive discharge where an employee resigns.").[2] Furthermore, the Eleventh Circuit has "long recognized that constructive discharge can qualify as an adverse employment decision under ADEA," *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001), and under § 1983, *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). This Court accordingly concludes that a constructive discharge may constitute an adverse employment action for purposes of showing retaliation under the FLSA's anti-retaliation provision.

> "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit

---

[2] The *Nero* opinion was affirmed without opinion in *Nero v. Hosp. Auth. of Wilkes Cty.*, 202 F.3d 288 (11th Cir. 1999).

his job." . . . A plaintiff must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." . . . Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim. . . .

*Bryant*, 575 F.3d at 1298–99 (internal citations and footnote omitted). The facts of this case, when "viewed in their proper context" and in the light most favorable to Plaintiff, show that the threats and intimidation Plaintiff experienced, if not great in frequency, were sufficiently "severe" such that Plaintiff has shown enough evidence to sustain a claim for retaliation in the form of a constructive discharge. *Bryant*, 575 F.3d at 1297.

## II. Reservation of Ruling, Given Outstanding Damages Issues

As set forth at the beginning of this Order, there remains at this stage of the proceedings substantial issues relating to Plaintiff's damages—namely, which damages he has shown, which damages he may recover under the FLSA, and the effect of these determinations on the viability of his cause of action. Accordingly, the Court finds it appropriate to reserve ruling on portions of Defendant's Motion for Summary Judgment, pending further briefing on the damages issues. By separate Order the Court will establish a briefing schedule, and continue the pre-trial and trial dates.

## III. Conclusion

Therefore, it is **ORDERED, ADJUDGED, and DECREED**:

1. Defendants' Amended Motion for Reconsideration **(DE 104)** be, and the same is, hereby **GRANTED in part and DENIED in part**.

2. This Court's Order Granting Summary Judgment in Part **(DE 101)** be, and the same is, hereby **VACATED**.

3. Plaintiff's Objections **(DE 96)** to the Report and Recommendation be, and the same are, hereby **OVERRULED in part and SUSTAINED in part.**

4. Magistrate Judge Edwin G. Torres's R&R **(DE 95)** be, and the same is, hereby **AFFIRMED and ADOPTED** as an Order of this Court in part.

5. Defendants' Motion for Partial Summary Judgment on Count II of the amended Complaint **(DE 65)** be, and the same is, hereby **GRANTED in part.**

    a. Defendant's Motion is granted as to that part of Plaintiff's Count II that seeks to recover for the following allegedly retaliatory acts: (1) Plaintiff's hours were reduced; (2) Plaintiff experienced a hostile work environment; and (3) Plaintiff was tasked to work in the hot sun.

    b. The Court **RESERVES RULING** as to that part of Plaintiff's Count II that seeks to recover for the following allegedly retaliatory acts: (1) the acts of Tony Beccari; (2) Defendants' demand that Plaintiff fill out the I-9 form; and (3) Plaintiffs' termination.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 10th day of June, 2015.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   All Counsel of Record